**Sharon SOMMERHALDER, Plaintiff,**

v.

**Shirley S. CHATER,[1] Commissioner, Social Security Administration, Defendant.**

Civ. No. 94–6353–FR.

United States District Court, D. Oregon.

May 4, 1995.

Brent Wells, Johnson, Cram & Harder, Eugene, OR, for plaintiff.

Kristine Olson, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, OR, Kathleen U. Holt, Sp. Asst. U.S. Atty., Seattle, WA, for defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Sharon Sommerhalder, brings this action pursuant to section 405(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (the Act), to obtain judicial review of the final decision of the Secretary to deny her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.

## BACKGROUND

Sharon Sommerhalder applied for disability insurance benefits and supplemental security income on November 6, 1992. At the hearing before an Administrative Law Judge (ALJ) on January 20, 1994, Sommerhalder stipulated that the date of the onset of her

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 206(d) of Pub.L. No. 103–296, Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. No further action need be taken to continue this suit. *Id.*

alleged disability is January 8, 1992. The ALJ issued a decision on March 25, 1994, in which he found, in part:

> The evidence establishes that the claimant has a history of post-traumatic arthritis; organic mental disorder; intermittent asthma and bronchial problems; history of alcohol and drug abuse, in long term remission; possible adult attention deficit disorder; and a history of a borderline personality disorder. These impairments are found to be severe, as they impose more than minimal restriction upon her capacity to perform basic work-related activity, regardless of vocational considerations.... The record does not establish that the claimant's impairments, considered both singly and in combination, meet or equal the severity of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

TR 23. On the basis of a vocational expert's testimony, the ALJ concluded that Sommerhalder has the residual functional capacity to perform her past relevant work as a cafeteria attendant. The ALJ then determined that Sommerhalder was not disabled within the meaning of the Act and denied her applications for benefits. TR 24. This became the final decision of the Secretary when the Appeals Council declined to review the decision of the ALJ.

## FACTS

At the time of the administrative hearing, Sommerhalder was thirty-six years old. She has a high school education and has attended some college classes. In the past fifteen years, she has worked as a janitor, a landscape laborer, a cafeteria attendant, a cook, a change person in a casino, a home health care aide, a gas station attendant, and a clerical assistant. TR 49–50, 66–67. However, from April of 1988 until the hearing on January 20, 1994, Sommerhalder had not engaged in substantial gainful activity.

Sommerhalder alleges that she has been disabled since January 8, 1992 because of degenerative disc disease and an organic mental disorder. However, for the purpose of this appeal, Sommerhalder is not arguing that she is disabled because of any physical impairments. Plaintiff's Memorandum in Support of Complaint for Review, p. 3.

Sommerhalder accepts the ALJ's summary of the medical evidence for purposes of the court's review. However, she disagrees with the ALJ's conclusion regarding the evidence. *Id.* The medical evidence regarding Sommerhalder's mental impairment is as follows:

> [O]n December 16, 1992, Dr. Ouelette reported that her chief work-related impairments involve reported difficulties concentrating.... Dr. Ouelette was of the opinion that the claimant could adapt to the right job situation. Peter LeBray, Ph.D., a clinical psychologist reported on December 14, 1992, that the medical record, including psychological evaluations from Dr. Lahman, concluded that the claimant had memory impairment associated with an organic mental disorder.... In Dr. LeBray's opinion, the claimant's mental problems caused her moderate difficulties in maintaining a social functioning, but only slight restrictions in her daily activities. Additionally, the claimant often experienced deficiencies of concentration, persistence or pace relating to work-like tasks; and she has occasionally experienced episodes of deterioration or decompensation at work or in a work-like setting.... Dr. LeBray found the claimant had marked limitations in her ability to understand and remember detailed instructions, and moderate limitations in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; respond appropriately to changes in the work place; and to set realistic goals or make plans independently of others....
>
> ... The mental status evaluation conducted by Dr. Lahman on February 27, 1992, revealed no observable difficulties communicating, thinking abstractly, or calculating. Her mood and affect were deemed appropriate, but tasks assessing memory functioning, concentration and attention revealed she had difficulties in these areas.... Dr. Lahman administered an MMPI–2 test that showed a very strong over-reporting of psychological symptoms on her part, thus reducing the validity of

the testing. Nevertheless, Dr. Lahman was of the opinion the claimant had "marked impairment in her social and work functioning," that limit her. However, Dr. Lahman did not indicate that the claimant was totally unable to work and he assigned her a global assessment of functioning score of 60, which indicates a largely intact functional capacity....

On November 13, 1992, the claimant was again evaluated by Dr. Lahman.... [H]e found the claimant's chief impediment to employment was her impaired cognitive functioning, particularly her memory. However, Dr. Lahman did not conclude she was unable to work; and he again assigned her a global assessment of functioning score of 60....

TR 18–20.

## CONTENTIONS OF THE PARTIES

Sommerhalder contends that the decision of the ALJ is not supported by substantial evidence and is contrary to law because the ALJ improperly rejected the medical opinion of Sommerhalder's treating physician, Frank G. Lahman, Ph.D. Sommerhalder argues that the medical reports of Dr. Lahman establish that she is disabled because of her organic mental disorder. In the alternative, Sommerhalder requests that her claim be remanded in order for the ALJ to receive further evidence to clarify the medical opinion of Dr. Lahman.

The Secretary contends that there is substantial evidence in the record to support the decision of the ALJ. The Secretary argues that the ALJ did not reject the medical opinion of Dr. Lahman. The Secretary also contends that the decision of the ALJ is supported by the medical reports of Laura M. Ouelette, M.D. and Peter LeBray, Ph.D. and by evidence of the daily activities of Sommerhalder.

## APPLICABLE LAW

The burden of proof rests upon the claimant to establish entitlement to disability benefits. *Rhinehart v. Finch,* 438 F.2d 920, 921 (9th Cir.1971). To meet this burden, Sommerhalder must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court will uphold the decision of the ALJ provided that the findings of the ALJ are supported by substantial evidence and the ALJ applied the correct legal standards. *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir.1992). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

A claimant's disability is evaluated following the five-step sequential evaluation set out in 20 C.F.R. § 416.920(a). The first step is to determine whether the claimant engaged in substantial gainful activity after the date of the most recent unfavorable determination. The second step is to determine whether the claimant has a "severe" impairment. The third step is to determine whether the impairment of the claimant is listed in or medically equivalent to an impairment listed in Appendix 1 of the disability regulations. The fourth step is to determine whether the impairment of the claimant prevents her from returning to her past relevant work. The fifth and final step is to determine whether the Secretary has carried the burden of showing that a claimant who cannot return to past relevant work can nonetheless perform other work which exists in significant numbers in either the claimant's regional economy, in the national economy, or both.

## ANALYSIS AND RULING

The ALJ determined that Sommerhalder met the special earnings requirements of the Act through March 31, 1992. The ALJ also determined that Sommerhalder had not engaged in gainful activity since April of 1988 and that she had a severe impairment, but that she did not have an impairment or combination of impairments listed in or medically equivalent to an impairment listed in Appendix 1 of the disability regulations. On the basis of the testimony of a vocational expert,

the ALJ determined that, despite her severe impairment, Sommerhalder retained the residual functional capacity to perform her past relevant work as a cafeteria attendant.

Sommerhalder challenges the ALJ's decision on the ground that the ALJ improperly substituted his opinion for that of the opinion of her treating physician, Dr. Lahman. Sommerhalder argues that the ALJ should not have rejected the medical opinion of Dr. Lahman regarding the severity of her mental impairment on the ground that Sommerhalder over-reported her symptoms because Dr. Lahman was aware of that fact when he issued his decision. Sommerhalder also argues that the ALJ should not have considered the global assessment of functioning score of 60 assigned by Dr. Lahman because Dr. Lahman assigned a score of 60 without further explanation, and the score of 60 is inconsistent with the narrative and objective medical findings in the remainder of Dr. Lahman's medical reports.

In assessing the severity of Sommerhalder's mental impairment, the ALJ evaluated Dr. Lahman's medical reports as follows:

> The claimant's representative argued that the report from Dr. Lahman from February 27, 1992, indicating that the claimant has "marked impairment in social and work functioning," is sufficient to establish the claimant's disability. The term "marked" has special significance in the evaluation of mental impairment in Social Security claims; and it commonly indicates mental impairments severe enough to preclude virtually all work activity. However, in this case, while Dr. Lahman initially used the term "marked" to describe the claimant's functional limitations, his report does not generally indicate that her impairments are severe enough to be totally disabling, and after he characterized her as "marked" he later found her presentation of symptoms exaggerated and described her level of limitation as "significant." It cannot be assumed that he still was of the opinion the claimant's limitations were "marked," after he discovered her reports were unreliable. In his later report from November 13, 1992, the claimant's evaluation was generally similar to that performed in February 1992, but he then characterized the claimant as having "significant" rather than "marked" impairments in her ability to function in a work or socialized setting. In both reports Dr. Lahman indicated that the claimant had substantial difficulty with her cognitive functioning, particularly that relating to memory, but he did not indicate that the claimant was precluded form all work activity. Additionally, Dr. Lahman noted that the claimant engaged in a wide range of daily activities and assigned her a general assessment of functioning score of 60, which is fairly good. It is not reasonable to infer that Dr. Lahman found the claimant unable to work because he used the term "marked," in light of his objective findings and narrative reports that do not indicate such a disabling level of impairment. Further, the mental residual functional capacity assessment by the Disability Determination Services (DDS) reflects limitations that are not disabling but are consistent with the objective medical findings of Dr. Lahman.

TR 20–21.

Sommerhalder relies on *Gonzalez Perez v. Secretary of Health and Human Servs.*, 812 F.2d 747 (1st Cir.1987), and *Ferguson v. Schweiker*, 765 F.2d 31 (3rd Cir.1985), to support her argument that the ALJ improperly substituted his opinion for the medical opinion of Dr. Lahman. In both of those case, the ALJ had rejected expert medical opinions after conducting an independent evaluation of the medical evidence. Those cases are distinguishable.

Here, the ALJ did not conduct an independent review of the medical evidence; rather, the ALJ found that Dr. Lahman had not concluded that Sommerhalder was totally disabled. The ALJ then determined, on the basis of Dr. Lahman's objective medical findings and narrative, that Sommerhalder could perform some work activities. The ALJ's conclusion that Sommerhalder could perform some work activities was not inconsistent with Dr. Lahman's medical opinion. Dr. Lahman found that Sommerhalder had "significant impairments in her ability to function in a work or socialized setting," primarily

because of "her difficulty with cognitive functioning, particularly related to memory." TR 533. However, Dr. Lahman also concluded that Sommerhalder had a global assessment of functioning score of 60, indicating a reasonable level of functioning.

The ALJ incorporated Sommerhalder's significant limitations, as identified by Dr. Lahman, in the hypothetical question he constructed for the vocational expert:

> [ALJ:] I'd like you to consider a hypothetical individual who is 36 years old, has a high school education plus some additional college training.... The first hypothetical is physically unlimited; a marked difficulty remembering ... detailed instructions and moderate difficulty carrying out detailed instructions; moderate difficulty maintaining attention and concentration for extended periods; moderate difficulty interacting appropriately with the public; moderate difficulty tolerating changes in the work setting; and moderate difficulty independently formulating plans and goals. With those limitations, could such an individual perform any of the work you identified as past work?

TR 67. In response to the hypothetical question, the vocational expert testified that a person with those impairments could perform work as a cafeteria attendant. TR 68. The ALJ's hypothetical was consistent with the medical evidence of Sommerhalder's mental impairment, including the reports of Dr. Lahman. The court finds that the ALJ did not reject the medical opinion of Dr. Lahman regarding the affects of her mental impairment. Even assuming that Dr. Lahman had concluded that Sommerhalder was totally disabled, which he did not, " '[t]he [ALJ] is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.' " *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993), quoting *Montijo v. Secretary of Health and Human Servs.*, 729 F.2d 599, 601 (9th Cir.

1984). Here, the ALJ gave clear and convincing reasons for finding that Sommerhalder was capable of performing her past relevant work as a cafeteria attendant and, therefore, was not disabled within the meaning of the Act. The court finds that there is substantial evidence in the record to support the determination of the Secretary that Sommerhalder does not have a disabling impairment.

Sommerhalder argues, in the alternative, that this case should be remanded to the ALJ for further evidence regarding the medical opinion of Dr. Lahman. Because the ALJ adequately considered the medical opinion of Dr. Lahman, there is no basis for a remand.[2]

### CONCLUSION

The findings of the Secretary are based upon substantial evidence in the record and, therefore, the court affirms the decision of the Secretary.

---

2. The court also notes that the ALJ gave Sommerhalder the opportunity to request the services of a medical expert, which she declined to do. The ALJ found that the record adequately documented Sommerhalder's mental impairment, and

that there was no need to call a medical expert. TR 21. The court agrees with the ALJ that the record in this case adequately documented Sommerhalder's mental impairment.