Domingo GONZALEZ PEREZ,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 86–1492.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1986.

Decided Jan. 12, 1987.

Ivan O. Gonzalez Cruz, Juan A. Hernandez Rivera and William Dominguez Torres, Bayamon, P.R., on brief, for plaintiff, appellant.

Nigel Jamieson, Office of the Gen. Counsel, Social Security Div., Dept. of Health and Human Services, Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for defendant, appellee.

Before COFFIN, BOWNES and
BREYER, Circuit Judges.

PER CURIAM.

The claimant, Domingo Gonzalez Perez, has appealed a district court judgment, which affirmed a decision of the Secretary of Health and Human Services (the Secretary) denying the claimant's application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 401 *et seq.* The claimant alleged disability primarily due to a visual impairment caused by cataracts. Because we conclude that the ALJ inappropriately applied the Step 2 severity assessment standard, as that standard has been interpreted by the Secretary's rulings and by caselaw, we vacate and remand.

The ALJ found that the claimant had "surgical aphakia[1] in the right eye due to bilateral senile cataracts,[2] and bilateral shoulder pain." Nonetheless, the ALJ determined that these impairments did not significantly limit the claimant's ability to perform basic work-related activities and

---

1. Absence of the lens of the eye. Dorland's Illustrated Medical Dictionary 116 (24th ed. 1965).

2. A senile cataract is "a hard opacity of the nucleus of the lens of the eye, occuring in the aged." Dorland's Illustrated Medical Dictionary 262–263 (24th ed. 1965).

that therefore the claimant did not have a severe impairment within the meaning of the Social Security Act.

The ALJ did not have the benefit of this court's opinion in *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118 (1st Cir.1986), at the time of his decision. In the *McDonald* case, we considered the Secretary's severity regulation in light of Social Security Ruling 85–28 and concluded that the inquiry as to whether an impairment is severe or not severe (Step 2 of the review process, *see Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5 (1st Cir.1982)) is "designed to do no more than screen out groundless claims." *McDonald v. Secretary of Health and Human Services*, 795 F.2d at 1124. We have reviewed the record and do not find that the ALJ's determination of non-disability, at least at this stage of the sequential inquiry, is supported by substantial evidence.

The record reveals that the claimant first consulted Dr. Jose Fossas, an ophthalmologist, in November 1983 because of a progressive loss of vision. In February 1984, Dr. Fossas found the claimant's vision in his right eye to be 20/200 and in his left eye to be 20/40. In April 1984, the claimant had a cataract removed from his right eye. During an examination on June 16, 1984, Dr. Fossas found that, with respect to the claimant's right eye, without correction, the claimant could count fingers, and that with correction, the claimant's vision was 20/70. With respect to the claimant's left eye, his vision was 20/80 without correction and 20/50 with correction. The claimant's visual field was described as "full." A future cataract extraction in the claimant's left eye was "pending." Dr. Fossas saw the claimant again on June 30th and July 14th. Findings on these dates were substantially the same as those findings of June 16, 1984, except that the claimant's visual acuity in his right eye was 20/60 with correction.

The record also contains an additional medical report from Dr. Fossas, dated September 26, 1984. (Exhibit 17.) This report essentially repeats what the visual acuity findings were on several of the prior examinations. The report concludes with the following:

"Vision could be improved to 20/50 with contact lens O.D.,[3] but patient does not tolerate it! Also patient cannot wear aphakic glass in O.D. due to *anisometropia*.[4]

"Since patient cannot wear glasses to improve vision of right eye, he must keep wearing glasses *only for left eye* with best corrected vision of 20/50 left eye, and count fingers right eye.

"To my best knowledge this condition disables him for work!" (emphasis in the original)

The ALJ found this explanation for the claimant's inability to use correction in his operated eye to be "not fully credible" because (1) "the possibility of secondary gains in the intolerance of the lens has to be considered," (we interpret this comment by the ALJ to mean that for purposes of a disability claim, the claimant may consider it in his interest if he is unable to wear a contact lens); (2) the ALJ found it "difficult to believe that such an irreconcilable difference in correction exists between one eye and the other, especially when [the claimant] does need significant correction for his better eye also;" and (3) this report deserves less probative weight because it was obtained after the claim was filed and on counsel's advice and referral to provide further evidence for this claim.

The ALJ also discounted an opthalmological examination report dated September 19, 1984 by Dr. Andres Montalvo. (Exhibit 16.) This report in general painted a bleak picture of the claimant's condition. Dr. Montalvo reported the claimant's visual acuity without correction as hand movements with respect to the right eye and 20/200 in the left eye and corrected visual

---

3. Right eye. Dorland's Illustrated Medical Dictionary 1033 (24th ed. 1965).

4. A difference in the refractive power of the two eyes which can be corrected by ordinary lenses. Dorland's Illustrated Medical Dictionary 96 (24th ed. 1965).

acuity as 20/300 with difficulty in the right eye and 20/70 in the left eye. Dr. Montalvo commented that the claimant presented "marked visual disability mainly due to optic nerve atrophy in both eyes.... Visual disability is permanent and progressive in nature. Amounts to 73% of the visual apparatus, based on visual acuity only. Actually it is 100% based on visual fields studies." The ALJ found Dr. Montalvo's report of optic nerve atrophy suspect since this impairment "was not corroborated" by any of Dr. Fossas' examinations. The ALJ also believed that Dr. Montalvo's report deserved less probative weight because it, like Dr. Fossas' report of September 26th, was obtained after the claim was filed and on counsel's advice and referral to provide further evidence for the claim.

While we make no determination as to whether the claimant's visual impairment is such that he is disabled within the meaning of the Social Security Act, 42 U.S.C. § 401 *et seq.*, we believe that the claimant has made "a reasonable threshold showing that the impairment is one which could conceivably keep him or her from working" such that his claim cannot appropriately be viewed as "groundless." *McDonald v. Secretary of Health and Human Services*, 795 F.2d at 1122–23.

■ The ALJ's reasons for discounting the credibility of Exhibits 16 and 17 provide insufficient support for his decision in this case. The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician, as the ALJ appears to have done in this case, by simply rejecting Dr. Fossas' statement that the claimant is unable to tolerate or to wear profitably a corrective lens for his right eye. *See Berrios v. Secretary of Health and Human Services*, 796 F.2d 574, 576 (1st Cir.1986) (Appeals Council, composed of lay persons, was not competent to interpret and apply raw, technical medical data). The ALJ notes that Dr. Montalvo's report did not mention any difficulty with respect to the refractive power of the claimant's eyes. Any supportive weight given to the ALJ's rejection of Dr. Fossas' judgment as to the claimant's refractive difficulty by the lack

of reference to any such difficulty in Dr. Montalvo's report is diminished, if not eliminated, by the ALJ's simultaneous skepticism of Dr. Montalvo's evaluation itself. The ALJ rejected Dr. Montalvo's diagnosis of optic nerve atrophy because of lack of corroboration by Dr. Fossas' examinations. Thus, the ALJ criticized Exhibit 17 because the finding recited there was not mentioned in Exhibit 16 and criticized Exhibit 16 because its diagnosis was not mentioned in Exhibit 17. The ALJ ultimately accepted neither medical conclusion. While we decline to state that an ALJ faced with such reports must credit at least one evaluation (we note that these diagnoses do not appear to be mutually exclusive), the ALJ in this case discounted both reports for the additional reason that they had been obtained after the claim had been filed and on advice and referral of counsel. In our review of social security disability cases, it appears to be a quite common procedure to obtain further medical reports, after a claim is filed, in support of such a claim. Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them.

■ The ALJ opined that even if the claimant was "given the benefit of the doubt" and therefore had "some limitation due to his visual and shoulder's condition," the record was barren of evidence from which to conclude that the claimant could not perform "light" work of the sort he had done in the past "not requiring driving." This brief statement of alternative support for the conclusion of non-disability is not sufficiently developed to allow us to uphold the ALJ's decision. Moreover, the evidence indicated that the claimant's past employment as a data technician and as a co-owner of a supermarket required him, *inter alia*, to compile data, fill out forms, keep records, or to purchase the groceries and pay the bills (R. 57, 59); that he testified that he was unable to do paperwork (R. 25–26, 29–30); and that one claims reviewer noted that the claimant had difficulty in seeing where to sign the form (R. 69). We therefore do not find evident the basis for the ALJ's confidence in the relatively

minimal impact of the claimant's visual impairment on his work experience.

We reiterate that we express no view as to whether the claimant may ultimately be determined to be disabled within the meaning of the Social Security Act. We conclude, however, that the review in this case was inappropriately terminated at the Step 2 severity level and remand on that ground. *See* 20 C.F.R. § 404.1521 ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." Examples of basic work activities include "capacities for seeing"). On remand, the ALJ may find a further opthalmalogical examination and vocational testimony to be appropriate.

We vacate the judgment of the district court and remand to that court with instructions to remand to the Secretary for further proceedings consistent with this opinion.

*Vacated and remanded.*