Monica ARROYO, Plaintiff

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant

No. CIV.A. 03–30047–KPN.

United States District Court,
D. Massachusetts.

Dec. 4, 2003.

Richard C. Roth, Law Office of Richard C. Roth, Springfield, MA, for Monica Arroyo, Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Jo Anne B. Barnhart, Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE OR REMAND and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Docket Nos. 12 and 13)*

NEIMAN, United States Magistrate Judge.

This matter is before the court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) which provide for judicial review of a final decision by the defendant, Commissioner of the Social Security Administration (the "Commissioner"), regarding an individual's entitlement to Supplemental Security Income ("SSI") disability benefits. Monica Arroyo ("Plaintiff") claims that the Commissioner's decision denying her SSI benefits—memorialized in a January 24, 2003 decision by an administrative law judge—is not supported by substantial evidence and is predicated on errors of law. Plaintiff has moved to reverse or remand the decision and the Commissioner, in turn, has moved to affirm.

With the parties' consent, the matter has been reassigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, the Commissioner's motion to affirm will be denied and Plaintiff's motion will be allowed, but only to the extent it seeks a remand.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evi-

dence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Services,* 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Services,* 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez,* 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Services,* 826 F.2d 136, 141 (1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Services,* 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff, born on June 5, 1954, in Puerto Rico, received a General Education Development certificate in 1992. (Administrative Record ("A.R.") at 723.) She is not able to communicate in English and has no work history outside her home. (A.R. at 26, 35.) She resides with her two youngest daughters in Springfield, Massachusetts. Although Plaintiff filed two prior

applications for SSI benefits, it is her April 29, 2000 application which is presently before the court.

## A. MEDICAL & PSYCHOLOGICAL HISTORY

Plaintiff alleges that she became disabled on January 1, 1997, due to asthma, depression, nerve problems, lower back pain and high blood pressure. (A.R. at 26.) Her medical and psychological histories are discussed separately.

### 1. Medical Background

On August 5, 1999, Plaintiff was seen by an allergist, Dr. Robert McGovern, at the request of her primary care physician, Dr. Martha Nathan, for complaints of sneezing, nasal congestion and wheezing. (A.R. at 556.) After Plaintiff had positive skin tests, Dr. McGovern concluded that she suffered from allergic rhinitis and suggested bi-monthly immunotherapy. (A.R. at 556–57.)

On June 2, 2000, Dr. Nathan assessed Plaintiff's respiratory complaints and noted clinical evidence of shortness of breath on exertion—"bronchospasm or dyspnea"—although Plaintiff stated that she had not experienced any severe episodes within the previous twelve months. (A.R. at 558.) On September 22, 2000, after complaining the previous week of headaches, cold symptoms and body aches, Plaintiff underwent a CT-scan of her head and mallofacial bones. (A.R. at 603–04.) The results were normal. (Id.)[1]

On November 14, 2000, Dr. Nathan diagnosed Plaintiff with hypertension, which she controls with medication, and with moderate chronic asthma, the symptoms of which she experiences even at rest. (A.R. at 629–32.) Soon thereafter, a pulmonary function test and a chest x-ray came back within normal limits. (A.R. at 665.)

On January 3, 2001, Dr. Nathan, at Plaintiff's request, completed a Pulmonary Residual Functional Capacity Questionnaire. (A.R. at 633–39.) Noting that Plaintiff had a fair prognosis, Dr. Nathan diagnosed Plaintiff with noncardiac chest pain, low back pain, hypertension and asthma. (A.R. at 633.) Dr. Nathan also reported that Plaintiff was suffering from shortness of breath, chest tightness, fatigue, wheezing and coughing and that upper respiratory infections, allergens and exercise precipitated her symptoms. (A.R. at 634.) Dr. Nathan opined that Plaintiff's symptoms were severe enough to frequently interfere with her attention and concentration and that she was moderately limited in her ability to deal with work stress. (A.R. at 635.) Dr. Nathan also stated that Plaintiff was limited in her ability to perform certain physical functions, including sitting, standing or walking for more than two hours in any work day, lifting more than ten pounds, or performing tasks involving repetitive reaching. (A.R. at 636–38.) Finally, Dr. Nathan advised that Plaintiff should avoid all exposure to chemicals, solvents, cleaners, soldering fluxes, cigarette smoke, perfumes, fumes, odors, dusts and gases. (A.R. at 638.)

### 2. Psychological Background

Plaintiff was under the care of Dr. Bruce Goderez, a psychiatrist, from 1993 to August of 2000 for treatment of depression and anxiety. (A.R. at 166–210.) According to Dr. Goderez, Plaintiff was markedly limited due to anxiety and panic attacks, especially outside her home environment. (A.R. at 596–97.) In a March 2000 report, Dr. Goderez described Plaintiff's panic attacks as "frequent episodes in

---

**1.** Plaintiff had also complained of severe headaches to her former primary care physician, Dr. Katherine Gerstle; in August and October of 1997, Dr. Gerstle attributed these headaches to thoracic paravertebral muscle spasms. (A.R. at 527–30.)

which she feels difficulty breathing and discomfort in her chest radiating down her left arm." (A.R. at 559–71.) Nonetheless, he assessed Plaintiff as relatively stable when taking prescribed medications. (A.R. at 571.)

On August 23, 1999, a Psychological Functional Capacity ("PFC") report was completed by Vera Diaz, R.N., and signed by both Ms. Diaz and Dr. Goderez. (A.R. at 596–97.) The report diagnosed Plaintiff with major depression and generalized anxiety and stated that she suffered marked limitations, outside her home environment, in activities of daily living and functioning. (A.R. at 596.) The report further stated that Plaintiff suffers from marked limitations in her ability to understand, remember or follow even simple instructions or to function in social situations. (A.R. at 597.)

In the summer of 2000, Dr. Edgardo Bianchi took over Plaintiff's psychiatric care. (See A.R. at 572–74.) Observing that Plaintiff had a long history of depression and anxiety attacks, Dr. Bianchi changed her medical regimen as he felt it was only partially effective. (A.R. at 574.) Several months later, in November of 2000, Dr. Bianchi reported that Plaintiff continued to feel anxious, but was not having panic attacks. (A.R. at 572.)

At Plaintiff's request, psychiatric nurse Ileana Miranda completed a PFC report on October 24, 2000, in which she assessed Plaintiff's vocational limitations. (A.R. at 598–99.) On September 14, 2001, Lillian Rodriguez, a mental health clinician, completed another PFC report in which she stated that Plaintiff suffers serious interference in her ability to perform daily activities and to function socially. (A.R. at 674–75.) She cited a long list of limitations she believed Plaintiff suffers due to her depression and anxiety. (Id.)

B. PROCEDURAL HISTORY

As indicated, Plaintiff filed her latest SSI application on April 29, 2000. That application was denied initially and upon reconsideration. During this administrative process, Plaintiff underwent a consultative physical examination by a state agency physician. (A.R. at 585–87.) In addition, two non-examining agency physicians reviewed Plaintiff's medical records and completed Physical Residual Functional Capacity assessments. (A.R. at 588–95, 642–49.) An agency psychologist also reviewed the record and completed a Psychiatric Review Technique form. (A.R. at 576–84.)

The consulting physician, Dr. Jose Azocar, reported on August 15, 2000, that Plaintiff suffered low back pain for years, hypertension for the past two years, as well as chest pain that was not cardiac in nature. (A.R. at 585–87.) Dr. Azocar diagnosed Plaintiff with bilateral sacrioliac arthralgia, disc disease, possible degenerative joint disease of the lumbrosacral vertibrae and hypertension, and noted her history of asthma, depression, anxiety and nasal allergies. (A.R. at 587.) He recommended that Plaintiff avoid frequent bending, heavy lifting, or prolonged sitting or standing. (Id.) He also opined that other limitations might arise as Plaintiff's hypertension progressed and recommended that, during episodes of depression and anxiety, Plaintiff should limit her activities with others. (Id.)

Over the course of the next several months, both non-examining agency physicians, Drs. E. DeRosa and Oscar A. Cartaya, concluded in their Physical Residual Functional Capacity assessments that Plaintiff would be limited to lifting and carrying fifty pounds occasionally and twenty-five pounds frequently. (A.R. at 588–95, 642–49.) They also believed that she could walk and/or stand about six

hours in an eight-hour work day and sit about six hours in an eight-hour work day. (A.R. at 589, 643.) They both indicated as well that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. (A.R. at 592, 646.) One of the physicians, Dr. DeRosa, opined on August 25, 2000, that Plaintiff could occasionally stoop, while Dr. Cartaya opined on January 8, 2001, that Plaintiff could occasionally climb ladders, ropes and scaffolds. (A.R. at 590, 644.)

Meanwhile, on June 26, 2000, the agency psychologist, Orrin Blaisdell, Ph.D., reviewed the administrative record and, as indicated, completed a Psychiatric Review Technique form. (A.R. at 576–84.) Dr. Blaisdell concluded that Plaintiff suffers from non-severe affective and anxiety-related disorders. (A.R. at 576.) However, he found no evidence of organic mental disorders, schizophrenic, paranoid or other psychotic disorders, mental retardation or autism, somatoform disorder, personality disorders, or substance addiction disorders. (A.R. at 578–82.)

Plaintiff's administrative hearing was held on December 10, 2001. (A.R. at 25.) After reviewing the evidence of record, the ALJ concluded in a decision dated January 24, 2002, that Plaintiff was not disabled. (A.R. at 25–35.) Plaintiff's request for review by the Appeals Council was denied on January 8, 2003, thereby making the ALJ's decision the final decision of the Commissioner. (A.R. at 10–11.)

### III. DISCUSSION

An individual is entitled to SSI benefits if, among other things, she is needy and disabled. *See* 42 U.S.C. §§ 1381a and 1382c(a)(3). Plaintiff's financial need is not challenged. The question is whether she suffers from a disability.

### A. DISABILITY STANDARD AND THE ALJ'S DECISION

An individual is considered disabled under the Social Security Act ("the Act") if she is unable to participate in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is considered disabled under the Act:

> only if [her] physical of mental impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See Barnhart v. Thomas*, —— U.S. ——, 124 S.Ct. 376, 379–80, 157 L.Ed.2d 333 (2003).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimants physical or mental capacity to perform basic work-related functions." If [s]he does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of im-

pairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

. . . . .

Fourth, . . . . does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question. Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so, [s]he is disabled; if not, [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these questions: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question one); that Plaintiff had an impairment or combination of impairments considered "severe," although not severe enough to be listed in Appendix 1 (questions two and three); that she had no past work experience (question four); but that she was able to perform "a significant range of medium work" in the national economy (question five). As a result, the ALJ concluded that Plaintiff did not suffer from a disability and, therefore, was not eligible for SSI benefits. (A.R. at 34–36.)

B. *ANALYSIS OF PLAINTIFF'S CHALLENGE TO THE ALJ'S DECISION*

Plaintiff mounts a number of challenges to the ALJ's decision, two of which are important for purposes here. First, Plaintiff asserts that the ALJ improperly assigned "little weight" to Plaintiff's treating physicians—in particular, Dr. Nathan and psychiatric nurse Ileana Miranda—in part because both opinions were solicited by Plaintiff's counsel. Second, Plaintiff argues that, in contravention of the record evidence, the ALJ inappropriately found Plaintiff's subjective complaints "not entirely credible." These two arguments will be addressed in turn.

1. *Weight Assigned to Treating Sources*

■ Plaintiff's first argument concerns the ALJ's decision to assign "little weight" to both Dr. Nathan's January 3, 2001 Pulmonary Residual Functional Capacity Questionnaire and Ms. Miranda's PFC report. The ALJ's decision was based, in part, on his observation that both reports were "offered on solicitation of the claimant's representative, as an accommodation to [the] application." (A.R. at 28, 29.) Plaintiff contends that assigning little weight to these opinions on such grounds is an error at law, based as it was on an impermissible exercise of discretion.

As Plaintiff points out, the Ninth Circuit Court of Appeals entertained this very question in *Reddick v. Chater*, 157 F.3d 715 (9th Cir.1998). "[T]he mere fact that a medical report is provided at the request of counsel," the court stated, "or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Id.* at 726. The court held that, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Id.* Although it might be proper to reject a doctor's opinion letter that "varied from his treatment notes and 'was worded ambiguously in an apparent attempt to assist the claimant in obtaining social security benefits,'" the court explained, it was not proper to reject the opinion of a doctor simply because it was solicited by a claimant's attorney. *Id.* (quoting *Saelee v. Chater*, 94 F.3d 520, 523

(9th Cir.1996)) (in turn, citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.1995)).

As it turns out, the First Circuit previously reached a similar conclusion in *Gonzalez Perez v. Sec'y of Health & Human Services*, 812 F.2d 747 (1st Cir.1987). Although cited by Plaintiff for a different proposition, *Gonzalez Perez* criticized an administrative law judge for having assigned a doctor's report little weight because, in part, it was obtained "on advice and referral of counsel" after the disability claim was filed. *Id.* at 749. "In our view of social security disability cases," the court stated, "it appears to be quite a common procedure to obtain further medical reports, after a claim is filed, in support of such a claim." *Id.* Accordingly, the court directed, "[s]omething more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them." *Id.*

The instant matter falls comfortably within this line of cases. As in both *Reddick* and *Gonzalez Perez*, the ALJ here made clear that Plaintiff's counsel's solicitation of Dr. Nathan's and Ms. Miranda's reports factored into his decision to assign them "little weight." If such solicitation were the only reason for the decision, of course, the ALJ would have committed a legal error. However, as both *Reddick* and *Gonzalez Perez* make clear, an administrative law judge's decision can still pass muster if the other reasons given to accord medical reports little weight are adequately supported. *See Reddick* 157 F.3d at 726; *Gonzalez Perez*, 812 F.2d at 749.

Here, there is no dispute that the ALJ provided other bases for his decision. With respect to Dr. Nathan, the ALJ found that her opinions were not well supported or adequately explained, were outside her area of expertise and were "inapposite to the longitudinal record." (A.R.28). As for Ms. Miranda, the ALJ

concluded that, as a nurse, she was not an acceptable medical source and, in addition, that her opinions were also "inapposite to the longitudinal history." (A.R. at 29–30.)

Standing alone, these explanations might be deemed sufficient to credit the ALJ's decision. For example, governing regulations permit an administrative law judge, when weighing a treating physician's medical opinion, to consider the "examining relationship," the "treatment relationship" and the "supportability" of the opinion. 20 C.F.R. § 416.927(d) (2003). In addition, nurses are not specifically listed in the governing regulations as individuals who can provide impairment evidence. 20 C.F.R. § 416.913(a) (2003). *But see* 20 C.F.R. § 416.913(d) (2003) (stating that medical sources other than those specifically listed in § 416.913(a), including nurse-practitioners, can be used to show an impairment's severity or its effect on a claimant's ability to work). The court, however, is reluctant to assume too readily that the ALJ's alternative explanations were sufficient in the circumstances presented here to overcome the taint of his impermissible justification. Closer scrutiny is in order.

After careful review, the court concludes that the alternative reasons mentioned by the ALJ for assigning little weight to Dr. Nathan's report—other than it having been solicited—are problematic for at least three reasons. First, there appears to be no support in the record for the ALJ's statement that many of the areas touched upon in Dr. Nathan's report were outside her area of expertise. (A.R. at 28.) *See* 20 C.F.R. § 404.1527 (2003) (stating that the opinion of a specialist is generally given more weight within his or her area of expertise). Indeed, the qualifications of the agency physicians, whose opinions were fully credited by the ALJ, were not

within the administrative record either, opening them to the same charge.[2]

Second, the ALJ suggests that Dr. Nathan's opinions are not adequately explained or supported. (A.R. at 28.) Yet, neither Dr. Nathan's report nor her opinion differs significantly from the format of the reports and opinions of the two non-examining agency physicians to whom, it appears, the ALJ gave controlling weight. Moreover, neither report of the two agency physicians cites anything other than Plaintiff's medical history, (see A.R. at 588–95, 642–48), the same approach taken by Dr. Nathan, (see A.R. at 633–39), but found lacking by the ALJ.

Third, the ALJ stated that he gave little weight to Dr. Nathan's report because it was "inapposite to the longitudinal record." This is offered with little explanation, however. It is therefore difficult for the court to understand how the opinions of the treating physician, whose long history with the claimant is demonstrated by the record, is contradictory to that record.

As for Ms. Miranda, the ALJ stated, in part, that her report was entitled to little weight because a nurse's opinion is not an acceptable medical source. *See* 20 C.F.R. § 416.913(a) (2003). This overstates the impact of the rule. Even if Ms. Miranda is not an acceptable medical source on which to found an impairment, her report, as indicated, could have been used to assess the severity of Plaintiff's impairments or their effect on Plaintiff's ability to work. *See* 20 C.F.R. § 416.913(d) (2003). In the absence of a more developed analysis on the part of the ALJ, the court cannot accept for purposes here the alternative justification offered for assigning little weight to Ms. Miranda's opinion.

Given the insufficiency of the ALJ's analysis, the court has little choice but to conclude that his decision to assign little weight to both Dr. Nathan's and Ms. Miranda's opinions, because those opinions where solicited, remains tainted. Because, in turn, the weight determination is crucial to establishing whether or not Plaintiff is disabled, a remand is proper on this ground alone. *See Gonzalez Perez*, 812 F.2d at 749 (concluding that the administrative law judge's "brief statement of alternative support" for assigning less weight to a doctor's report was "not sufficiently developed to allow [the court] to uphold the ALJ's decision"); *Torres v. Sec'y of Health & Human Services*, 668 F.2d 67, 69 (1st Cir.1981) (noting uncertainty that administrative law judge's reliance on certain guidelines "had not unduly influenced the overall decision by tainting an area in which [the guidelines] should not have been considered at all").[3]

### 2. *Plaintiff's Subjective Complaints*

■ Plaintiff's second argument—that the ALJ analyzed her subjective complaints in contravention of *Avery v. Sec'y*

---

**2.** In her memorandum of law, Plaintiff avers that neither of the agency doctors are board certified in Massachusetts. Plaintiff also avers that Dr. De Rosa is a retired plastic surgeon with no experience in orthopedic, pulmonary or neurologic medicine.

**3.** Other decisions, in widely varying contexts, have expressed similar concerns, i.e., that an impermissible justification runs the risk of tainting an otherwise reasoned analysis. *See, e.g., Meguire v. Corwine*, 101 U.S. 108, 112, 11 Otto 108, 25 L.Ed. 899 (1879) ("That which is bad destroys that which is good. Where the taint exists it affects fatally, in all its parts, the entire body ...."); *Fields v. Clark Univ.*, 817 F.2d 931, 932–33 (1st Cir.1987) ("The [district] court found that the process by which plaintiff was denied tenure ... was tainted with sexual discrimination"; also found decision was "impermissibly infected with sexual discrimination"); *Guzman v. State*, 85 S.W.3d 242, 247–48 (Tex.Crim.App.2002) ("[J]ust as one bad apple spoils the barrel, one non-neutral reason [for striking juror] taints all neutral reasons.")

*of Health & Human Services,* 797 F.2d 19 (1st Cir.1986), and the Social Security regulations—lends additional support for a remand. In *Avery,* the First Circuit established a road map for evaluating a claimant's subjective complaints of pain. As the First Circuit observed, "[p]roper consideration of the effect of pain ... on an individual's ability to work is an important part of the disability evaluation process." *Id.* at 27 (quoting POMS T00401.570). This policy is grounded in the requirement that "there must be a clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." *Id.* at 21. *See also Dupuis v. Sec'y of Health & Human Services,* 869 F.2d 622, 623 (1st Cir.1989) (while "complaints of pain need not be precisely corroborated by objective findings, ... they must be [at least] consistent with medical findings").

■ To be sure, the First Circuit has long acknowledged that an administrative law judge is not required to take a claimant's subjective allegations at face value. *See Bianchi v. Sec'y of Health & Human Services,* 764 F.2d 44, 45 (1st Cir.1985) (citation omitted). Moreover, it is well established that a court must generally defer to credibility determinations made by an administrative law judge. *See Frustaglia v. Sec'y of Health & Human Services,* 829 F.2d 192, 195 (1st Cir. 1987); *Brown v. Sec'y of Health & Human Services,* 740 F.Supp. 28, 36 (D.Mass.1990). Nonetheless, a court must review an administrative law judge's determination to see if it comports with the law. In essence, the court must ensure that an administrative law judge made specific findings to the "relevant evidence" when deciding to disbelieve a claimant. *See Da Rosa v. Sec'y of Health & Human Services,* 803 F.2d 24, 26 (1st Cir.1986). *See also* Social Security Ruling (SSR) 96–7p, Evaluation of Symptoms in Disability Claims: Assess-

ing the Credibility of an Individual's Statements, 61 Fed. Regs. 34, 483, 34, 485–86 (1996) (requiring that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must ... give specific reasons for the weight given to the individual's statements"; and "the reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision").

■ Here, Plaintiff's argument to the contrary, the ALJ's analysis of Plaintiff's testimony was relatively specific. (A.R. at 31–32.) Nonetheless, the court believes that the ALJ's unsupported decision to discount the opinions of Plaintiff's doctor and nurse may well have undermined his credibility determination as well. In essence, the court is unable to judge whether the ALJ's dismissal of Plaintiff's testimony as "not entirely credible" was appropriate in light of the ALJ's separate findings regarding supposed "unimpressive medical findings" and "lack of objective medical data." (A.R. at 32.) In other words, it is impossible for the court to assess whether the ALJ's treatment of Plaintiff's subjective complaints comports or conflicts with the medical evidence. *See Avery,* 797 F.2d at 21 (requiring administrative law judge to consider a complainant's subjective testimony, but not to rely upon subjective testimony where it conflicts with medical evidence). For that reason, too, a remand is appropriate.

## IV. CONCLUSION

Given that the errors noted might affect not only the weight to be given to the opinions of Plaintiff's treating sources, but to Plaintiff's credibility as well, the court ALLOWS Plaintiff's motion to the extent it seeks remand and, hereby, remands the matter for further proceedings consistent with this opinion. The court leaves the decision as to whether a different adminis-

trative law judge should be assigned to the sound discretion of the commissioner. *See Nunez v. Barnhart,* 2002 WL 31010291, at *3–4 (E.D.N.Y. Sept. 9, 2002) (compiling cases holding that, on remand, the selection of a new administrative law judge is generally a decision for the Commissioner). Defendant's motion to affirm is DENIED.

IT IS SO ORDERED.