**Denise BROOKS, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant**

No. CIV.A.03–30114–MAP.

United States District Court,
D. Massachusetts.

Sept. 30, 2004.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Commissioner of the Social Security Administration, Defendant.

Catherine M. Hancock, Sullivan and Hancock, Easthampton, MA, for Denise Brooks, Plaintiff.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER* (Docket Nos. 7 & 11)

PONSOR, District Judge.

This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration regarding the plaintiff's entitlement to Supplemental Security Income ("SSI") disability benefits. The parties have filed cross-motions, the plaintiff seeking to reverse and the defendant seeking to affirm the decision of the Commissioner that denied the plaintiff these benefits.

The cross-motions were referred to Magistrate Judge Kenneth P. Neiman for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On March 8, 2004, the Magistrate Judge recommended that the defendant's motion be allowed and the plaintiff's motion be denied. Thereafter, the plaintiff, proceeding *pro se*, filed her objection to the Report and Recommendation. The court must now review the Magistrate Judge's recommended ruling *de novo*.

Using this standard, the court finds that the Report and Recommendation must be adopted. While evidence certainly exists in the record supporting plaintiff's allegations of pain and anxiety, the record is more than adequate to support the Commissioner's decision that there are sedentary and/or light work jobs available that the plaintiff is capable of performing despite her disabilities. As the Magistrate Judge pointed out, the evidence in the record, in the form of various medical opinions and the opinion of the vocational expert, provides adequate support for the Commissioner's determination in this case. As the First Circuit has held, "[a]lthough the record arguably could support a different conclusion, we believe there is substantial evidence to support the Secretary's decision." *Ortiz v. Secretary of HHS*, 955 F.2d 765, 770 (1991).

In sum, while the court sympathizes with the plaintiff's claims of disability, it simply cannot conclude that the Commissioner's decision lacked adequate support under the law. For these reasons, the Report and Recommendation of Magistrate Judge Kenneth P. Neiman dated March 8, 2004 (Docket No. 13) is hereby ADOPTED. The defendant's Motion to Affirm (Docket No. 10) is hereby ALLOWED; the plaintiff's Motion to Reverse (Docket No. 7) is hereby DENIED. This case may now be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION TO REVERSE and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 7 and 11)*

NEIMAN, United States Magistrate Judge.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") disability benefits. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Denise Brooks ("Plaintiff") alleges that the Commissioner's decision denying her those benefits—memorialized in a December 23, 2002 ruling by an administrative law judge—is marred by both legal and factual errors. Accordingly, she has moved to reverse the decision. The Commissioner, in turn, has moved to affirm. Both motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court will recommend that Plaintiff's motion be denied and that the Commissioner's motion be allowed.

## I. STANDARDS OF REVIEW

The Commissioner's factual findings in making her disability determination are conclusive so long as they are grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evi-

dence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," but is "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." *Irlanda Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and credibility determinations are for the Commissioner, not for doctors or the courts. *Rodriguez,* 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir.1987). However, a denial of benefits will not be upheld if there has been an error of law in the evaluation of the claim. *See Manso–Pizzaro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

## II. BACKGROUND

Plaintiff, born on August 17, 1962, is a high school graduate with some college-level education as well as training in the secretarial and hairdressing fields. (Administrative Record ("A.R.") at 30–33, 109.) She stopped working on December 8, 1998. (A.R. at 160.)

## A. MEDICAL HISTORY

Plaintiff's medical history involves both back pain and mental health issues. Her complaints of back pain date to at least 1995, as reflected in medical reports referring to recurrent pain exacerbated by particular activities. (A.R. at 234–91). A 1998 MRI showed degenerative changes and disc herniation. (A.R. at 168.) Throughout 1999, Plaintiff was treated by her primary care physician, Dr. Craig Kannel, with physical therapy, pain medication and epidural injections. (A.R. at 167, 247–64.)

On August 4, 2000, Plaintiff was evaluated by Dr. Gerda Maissel, a physician specializing in rehabilitation medicine, to whom she had been referred by Dr. Kannel. (A.R. at 167.) Plaintiff indicated to Dr. Maissel that her back pain had existed for many years and became worse in May of 2000 when she wrenched it. (*Id.*) She described constant pain that varied in intensity and limited how long she could sit, but that did not interfere with her ability to walk or climb steps. (A.R. at 169.)

Dr. Maissel noted that the 1998 MRI revealed degenerative changes in Plaintiff's lumbar spine and a herniation that had "regressed" in size between 1993 and 1998, but no signs of any nerve root compromise. (A.R. at 168.) On examination, Plaintiff exhibited some sensory abnormalities (but no sign of motor weakness), restricted range of back motion, paralumbar muscle spasm, and a "Waddell's sign" score of 3/5.[1] (A.R. at 170.) Dr. Maissel suggested a carefully-monitored trial of a long-acting narcotic pain reliever, such as Oxycontin, and discussed the need for exercise. (*Id.*)

In January of 2000, Plaintiff sought mental health treatment at the Baystate

---

1. " 'Waddell's signs' are a group of inappropriate responses to examination." (Commissioner's Brief at 3 n.1 (citing www.mlsime.com/generaltopics/waddell_signs).)

Medical Center. (A.R. at 218.) She reported that she had felt depressed since a traumatic incident on October 29, 1999. (*Id.*) Maryellen Kennedy, a psychiatric nurse, diagnosed Plaintiff with post traumatic stress disorder ("PTSD") and depression. (A.R. at 221.) Plaintiff was treated with antidepressant medication and participated in counseling through at least November of 2002. (A.R. at 188, 406–11.)

Meanwhile, in June of 2001, Plaintiff underwent a consultative physical examination by Dr. Alonso Sheffield, a state Disability Determination Service ("DDS") physician. (A.R. at 176–80.) Dr. Sheffield diagnosed Plaintiff with low back pain, chronic depression, PTSD, and sleep disturbance (despite prescribed medication). (*Id.*)

In July of 2001, Plaintiff underwent a consultative psychological examination by Dr. Martin Markey, a DDS psychologist. (A.R. at 187–89.) Dr. Markey reported that Plaintiff's chief complaints were depression and anxiety. (A.R. at 187.) Noting that Plaintiff appeared well-oriented and of average intelligence, Dr. Markey diagnosed a dysthymic disorder, mild PTSD, and an undifferentiated somatoform disorder. (A.R. at 189.)

Around this time, in June of 2001, Dr. William Straub, a state agency physician, reviewed Plaintiff's records and concluded that she could perform "light" work despite her impairments. (A.R. at 181–86.) In September of 2001, Dr. J. Scola, yet another state agency physician, reached a similar conclusion. (A.R. at 315–22.)

Somewhat concurrently, in July of 2001, Dr. Brian O'Sullivan, a state agency reviewing psychologist, found that Plaintiff was moderately limited in her ability to do the following: maintain concentration and attention for extended periods; perform activities within a schedule; maintain regular attendance; and complete a normal workday and workweek without interruptions due to psychological symptoms. (A.R.205–08.) Dr. A. Lazerson, yet another reviewing consultant, reached a similar conclusion in October of 2001. (A.R. at 323–25.)

On November 30, 2001, Dr. Kannel, Plaintiff's treating physician, completed a medical assessment in which he indicated that Plaintiff could perform "sedentary" work provided that she could change positions and limit reaching and fingering. (A.R. at 343.) On September 24, 2002, however, Dr. Kannel, responding to a September 18th questionnaire authored by the administrative law judge, concluded that it was "unlikely" that Plaintiff could sustain an eight hour workday at a sedentary position. (A.R. at 361–62.) The import of these two assessments by Dr. Kannel are discussed more fully below.

Meanwhile, in December of 2001, Ms. Kennedy, the psychiatric nurse, completed her own assessment in which she opined that Plaintiff was moderately limited in performing simple tasks, moderately to markedly limited in responding appropriately to work pressures, and markedly limited in responding to changes in a workplace setting. (A.R. at 347–48.) Ms. Kennedy also concluded that Plaintiff suffered from PTSD, major depression and anxiety, and that her medication interfered with her ability to concentrate, but not her ability to interact with others. (*Id.*)

B. PROCEDURAL HISTORY

On April 11, 2001, in the midst of these medical benchmarks, Plaintiff applied for SSI disability benefits. (A.R. at 109–12.) Her application was denied initially and upon reconsideration. (A.R. at 73, 74.)

Plaintiff then requested a hearing before an administrative law judge.

Plaintiff's administrative hearing was held on November 7, 2002, at which time she was represented by an attorney, albeit one different than the attorney presently representing her. (A.R. at 24–72.) Plaintiff, her next-door neighbor and a vocational expert all testified. The vocational expert testified that several thousand light or sedentary duty jobs were available to Plaintiff in Massachusetts. (A.R. at 68–69.) She further testified that, even were the administrative law judge (hereinafter the "ALJ") to accept the limitations outlined in Dr. Kannel's November 30, 2001 assessment, Plaintiff could still perform a protective service occupation and that approximately 26,000 such jobs existed in the national economy, 780 of which were in Massachusetts. (A.R. at 70.)

After reviewing the evidence of record, the ALJ concluded in a decision dated December 23, 2002, that Plaintiff was not disabled. (A.R. at 22–23.) On February 27, 2003, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (A.R. at 5–7.) *See* 20 C.F.R. §§ 416.1455, 416.1481 (2004). In due course, Plaintiff commenced the instant action.

### III. DISCUSSION

According to the Social Security Act ("the Act"), eligibility for SSI benefits requires a showing of both disability and financial need. *See* 42 U.S.C. § 1381a. Plaintiff's need is not challenged. The question, therefore, is whether she suffers from a disability.

### A. DISABILITY STANDARD AND THE ALJ'S DECISION

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled under the Act:

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). *See Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376, 379–80, 157 L.Ed.2d 333 (2003).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.

Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.

.    .    .    .    .

Fourth, ... does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982).

In the instant case, the ALJ found as follows with respect to these questions: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question one); that she had an impairment that was "severe," although not severe enough to be listed in Appendix 1 (questions two and three); that she was unable to perform any of her past relevant work (question four); but that she was able to perform "a significant range of light work" in the national economy, such as janitor, food preparation worker, and laundry worker (question five). The ALJ therefore concluded that Plaintiff did not suffer from a disability. (A.R. at 22–23.)

## B. Plaintiff's Challenge to the ALJ's Decision

Plaintiff challenges the ALJ's decision in essentially three ways, each of which centers on the fifth question, the extent of Plaintiff's residual functional capacity ("RFC") to perform other work which exists in significant numbers in the national economy. First, Plaintiff asserts that the ALJ failed to properly include her mental impairments in determining her RFC. Second, and relatedly, Plaintiff argues that the ALJ presented inaccurate hypothetical questions to the vocational expert, i.e., ones that failed to reference certain moderate mental limitations. And third,

Plaintiff contends that the ALJ erred in disregarding the opinion of her treating physician, Dr. Kannel, when concluding that she retained the capacity to perform work. In response, the Commissioner argues that the ALJ's decision is based on substantial evidence and not predicated on errors of law. In the court's view, the Commissioner has the stronger argument.

Plaintiff's first two arguments—both of which concern the ALJ's alleged failure to consider Plaintiff's mental limitations—can be dealt with in short order. Plaintiff's argument to the contrary, that ALJ made clear that he found Plaintiff to be moderately limited in various aspects of mental functioning. (See A.R. at 20.) Moreover, the hypothetical questions he posed to the vocational expert reflected those moderate limitations. And, as indicated, the vocational expert testified that, despite Plaintiff's mental and physical impairments, there were a number of jobs available to her. (A.R. at 68–70.) Granted, the vocational expert also testified that if Plaintiff needed to be absent from work at least three times per month, as she herself had testified, there would be no jobs available to her. (A.R. at 71.) Yet there was no medical evidence of record that such a limitation was necessary.

Plaintiff's third argument—that the ALJ impermissibly ignored the opinion of her treating physician, Dr. Kannel—requires a bit more analysis. In the end, however, the court finds Plaintiff's argument unpersuasive. As an initial matter, however, the court wishes to comment on certain aspersions which the ALJ cast on Dr. Kannel, e.g., that it was "obvious that the doctor simply capitulated to becoming the claimant's advocate." (A.R. at 20.)

In his September 18, 2002 letter to Dr. Kannel, the ALJ noted by way of introduction that Dr. Kannel had previously provided RFC information "at the solicitation

of [Plaintiff's] representative" and that he, the ALJ, "cannot help but feel the report was primarily based upon an uncritical acceptance of [Plaintiff's] own assessment of limitations." (A.R. at 360.) The ALJ also stated that he found Plaintiff's subjective assessment "suspect pursuant to the positive Waddell score noted by Dr. Maisel [sic] in her letter of 8/4/00." (*Id.*) Accordingly, the ALJ explained, he was seeking Dr. Kannel's "unvarnished, absolutely honest assessment of [Plaintiff's] physical limitations that can reasonably be accepted based upon objective findings." (*Id.*)[2]

As reflected in his December 23, 2003 decision, the ALJ was obviously dissatisfied with the answers provided by Dr. Kannel, finding them internally "inconsistent" with his November 30, 2001 assessment. The ALJ also stated in his decision that "[t]he inconsistency in the two reports ... make [it] obvious that the doctor simply capitulated to becoming the claimant's advocate, robbing the latter report ... of probative value." (*Id.*)

This latter statement is not only troubling, it can so taint a decision as to require a reward, as this court previously ordered with respect to this same administrative law judge. *See Arroyo v. Barnhart,* 295 F.Supp.2d 214 (D.Mass.2003). As the court explained, it is not proper to reject the opinion of a treating physician simply because it was solicited by a claimant's attorney. *Id.* at 220–21 (citing *Gonzalez Perez v. Sec'y of Health & Human Servs.,* 812 F.2d 747, 749 (1st Cir.1987); *Reddick v. Chater,* 157 F.3d 715, 726 (9th

Cir.1998)). Similarly here, the ALJ's criticism of Dr. Kannel—who, after all, signed his report under penalty of perjury—was uncalled for.

In the court's opinion, however, the ALJ's apparent disdain for Dr. Kannel does not justify reversal or remand. For one thing, Dr. Kannel's September 24, 2002 report was responsive to the ALJ's, not Plaintiff's attorney's, inquiry and the inquiry may well have been a legitimate attempt, in the first instance, to satisfy his concerns about the record as it stood. Further, as described, the ALJ did in fact incorporate Dr. Kannel's November 30, 2001 assessment into the hypothetical questions he asked the vocational expert. And, unfortunately for Plaintiff, the vocational expert testified that there were, in fact, sedentary jobs available which Plaintiff could perform. In other words, it appears that the ALJ did not entirely ignore Dr. Kannel's opinion, as Plaintiff now contends.

To be sure, the ALJ discounted Dr. Kannel's September 24, 2002 assessment—insofar as it suggested that it was "unlikely" that Plaintiff could perform any work, (A.R. at 361)—finding it inconsistent with the evidence provided in his prior report of November 30, 2001. As the Commissioner points out, however, Dr. Kannel's opinion on such an ultimate legal issue was not entitled to any special significance. *See* 20 C.F.R. § 416.927(e)(1) (2004) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.... A state-

---

**2.** The ALJ's questionnaire stated that it was to be signed by Dr. Kannel "under penalty of perjury" and contained the following highlighted warning:

ANYONE WHO MAKES, OR CAUSES TO BE MADE, A FALSE STATEMENT OR REPRESENTATION OF A MATERIAL FACT IN AN APPLICATION OR FOR USE IN DETERMINING A RIGHT TO PAY-

MENT UNDER THE SOCIAL SECURITY ACT COMMITS A CRIME PUNISHABLE UNDER FEDERAL LAW BY FINE, IMPRISONMENT OR BOTH.

(A.R. at 360–62.) Such conditions apparently were not required of the state agency interviewers, medical consultants, physicians or psychologists. (See A.R. at 126–29, 134–35, 176–89, 205–08.)

ment by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). *See also Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir.1991) (finding ALJ not required to accept conclusions of treating physician on ultimate issue of disability); *Sitar v. Schweiker*, 671 F.2d 19, 22 (1st Cir.1982) (similar). More importantly for purposes here, it can hardly be said that Dr. Kannel himself was certain that Plaintiff could not work. He merely stated that it was "unlikely" Plaintiff could perform sedentary work, admitted that even that assessment was based "entirely" on Plaintiff's subjective statements, and, indeed, pointed out that he "can't verify any of this." (A.R. at 361–62.) This is hardly the kind of evidence which can bind an administrative law judge.

Finally, as the Commissioner asserts, the findings of the other interviewers, medical consultants, physicians and psychologists substantially support the ALJ's conclusion that Plaintiff was limited in the work which she could perform. *See Arroyo*, 932 F.2d at 89 (holding that ALJ may assign greater weight to contrary opinions of reviewing physician if he has an adequate basis for doing so); 20 C.F.R. § 416.927(d)(2) (2004) (observing that a treating physician's medical opinion is entitled to controlling weight only when medi-

cally well-supported and not inconsistent with other substantial evidence in the record). In short, the court concludes that, despite the unnecessary criticism leveled on Dr. Kannel, there was substantial evidence for the ALJ's decision to deny benefits and that the decision is not marred by errors of law.

### IV. Conclusion

For the reasons stated, the court recommends that Plaintiff's motion to reverse the Commissioner's decision be DENIED and that the Commissioner's motion to affirm her decision be ALLOWED.[3]

March 8, 2004.

---

**3.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the

Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.