Mason v. SSA                          CV-98-417-B    04/20/99

UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Joanne Marie Mason</u>


      v.                              Civil No. 98-417-B

<u>Kenneth Apfel, Commissioner,</u>
<u>Social Security Administration</u>



                       <u>MEMORANDUM AND ORDER</u>


      Joanne Marie Mason suffers from depression and anxiety.  She

has not engaged in substantial gainful activity, as defined by

Social Security Administration ("SSA") regulations, since

February 24, 1994, the date on which she applied for Supplemental

Security Income ("SSI") disability  benefits.  After the SSA

denied Mason's application, she requested a hearing before an

Administrative Law Judge ("ALJ").  ALJ Robert Klingebiel held a

hearing on Mason's claim in May 1995 and denied her application

in February 1996, finding that Mason has the residual functional

capacity to perform her past relevant work as an elder care

companion.  The Appeals Council subsequently denied Mason's

request for review, rendering the ALJ's decision the "final"

decision of the Commissioner.

Mason brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) (West Supp. 1998) ("the Act"), challenging the ALJ's finding that her psychological impairments do not preclude her from working as an elder care companion.  For the following reasons, I vacate the ALJ's decision and remand the case for further proceedings.

### BACKGROUND[1]

Joanne Mason was 50 years old at the time of the ALJ's decision.  She has a ninth-grade education.  Prior to her alleged disability, Mason held full-time jobs as a boarding house manager and elder care companion.  She has not held gainful employment since February 24, 1994, the date on which she filed for SSI benefits.

Mason alleges an inability to work since March 1, 1993.  She was first seen for medical evaluation in early 1994, after complaining of chest pain.  Physical examination at that time indicated some evidence of chronic obstructive pulmonary disease ("COPD").  Shortly thereafter, in late May 1994, Mason was

---

[1]  As Mason does not contest the ALJ's finding with respect to her physical impairments, I present the facts most relevant to the psychological impairment at issue.  These facts are taken from the Joint Statement of Material Facts filed by both parties.

diagnosed with acute myocardial infarction and coronary artery disease, along with mild congestive heart failure.  Between that time and February 1995, Mason was medically evaluated on several occasions for heart and circulatory problems.  These visits included treatment by Dr. Jon Wahrenberger from November 1994 to March 1995.  During this treatment period, Mason experienced frequent crushing chest pain.  Dr. Wahrenberger concluded that Mason was disabled on the basis of her symptoms, but he saw her as a victim of her own bad habits, including tobacco consumption, weight gain, and high cholesterol. Complications from her heart condition included right hand ischemia, with involvement of the third and fourth fingers, resulting from a large embolism.  Mason subsequently underwent coronary angiography and catheterization for her heart conditions on January 25, 1995, and was discharged on January 29, 1995.

On June 21, 1995, Mason returned to see Dr. Wahrenberger, who noted that Mason had improved dramatically, appeared to have normal function, and was without significant pain in her right hand.  He noted that she was an anxious woman, with many worries about returning to work.  He advised psychiatric evaluation, and saw no physical reason that would prevent her from returning to work.

During the same time period, on May 25, 1995, the ALJ held a hearing in consideration of Mason's application for SSI benefits. Mason appeared and testified at this hearing. The ALJ determined that a consultative psychological examination was required, since Mason appeared to have some psychological issues that were not well developed in the medical records. Mason subsequently underwent a psychological evaluation at the request of the SSA on August 31, 1995. Dr. Phillip Massad, Ph.D., took her history and complaints, and Mason tested as both depressed and anxious. She scored 76 on the Zung Depression Inventory, a high score for an outpatient. She also scored significantly above average (71) on the Clinical Anxiety Scale. Her demeanor was irritable and her mood was angry. She told Dr. Massad that her daily activities had changed as a result of her condition; she had less contact with others, was more withdrawn and avoided stressful situations.

Dr. Massad diagnosed depression and anxiety, and noted that treatment with medication may help. He stated that Mason's present emotional status would likely interfere with her adaptation to stresses common to a working environment. He stated that it was unclear how Mason would deal with attendance, schedules and supervisors.

Dr. Massad also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). In his evaluation, which was based solely on psychological factors, Dr. Massad found that Mason had poor or no ability to interact with supervisors or to deal with work stresses. He found she had fair ability to follow work rules, relate to co-workers, deal with the public, use judgment, function independently and maintain attention/concentration. In explaining the medical/clinical findings that support this assessment, Dr. Massad wrote that Mason would likely react to job stresses with considerable frustration. Dr. Massad also found that Mason had poor or no ability to relate predictably in social situations, and she rated fair to poor on ability to behave in an emotionally stable manner and on demonstrating reliability. Dr. Massad explained that these findings were supported by Mason's scores on the Zung Inventory.

Mason appeared and testified at a second SSA hearing held on December 13, 1995, subsequent to Dr. Massad's consultative psychological examination. Bruce Chipman, a Vocational Expert ("VE"), also appeared and testified that he had not received any information about Mason's medical or work history prior to the

hearing and had not reviewed information about Mason's education or age.

Chipman inquired about Mason's past work as a boarding house manager. Mason testified that she inspected rooms and collected rents in exchange for a free room. Relying on Mason's responses, Chipman testified that Mason's past work as a boarding house manager would be classified as light exertion and low-level, semi-skilled work.

In response to a hypothetical question involving an individual who is 50 years old with a ninth-grade education, restricted to lifting no more than 20 pounds and further limited to jobs where there were no other strenuous requirements, such as climbing ladders, or repetitive lifting from the floor onto shelves, or any interaction with customers or the public, Chipman testified that such an individual could not perform Mason's past work if one of the duties was collecting rent. Chipman stated that such an individual could, however, work as a companion, a semi-skilled and light exertion occupation.

Mason's attorney then cross-examined Chipman, asking him an additional hypothetical question. In response to a hypothetical question with the additional limitations that the individual has

a poor ability to relate predictably in social situations and a poor ability to interact with supervisors and deal with work stress, Chipman stated that the additional limitations would eliminate all of the previously identified jobs.

The ALJ found that the medical evidence established that Mason has a severe impairment from atherosclerotic cardiovascular disease, status-post myocardial infarction, depression and anxiety, but that she does not have an impairment or combination of impairments that either meet or equal in severity one of the Commissioner's listed impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1. Having found that Mason's impairments did not meet any listed impairments under step three of the five-step sequential disability analysis,[2] the ALJ went on, under step four

---

[2]The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful employment;
    (2) whether the claimant has a severe impairment that lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
See 20 C.F.R. § 404.1520.

of the analysis, to assess whether Mason's impairments prevented her from performing her past relevant work. The ALJ found that Mason retained the residual functional capacity to perform the exertional and non-exertional requirements of work, except for the exertional requirements of very heavy, heavy, medium and the full range of light work. He also found that she had non-exertional restrictions of no climbing ladders or frequent bending; and that she should be limited to low stress jobs that do not require her to make decisions or interact frequently with the public.

The ALJ found that Mason had an affective disorder and an anxiety disorder with slight restrictions on activities of daily living; slight difficulties in social functioning; seldom deficiencies of concentration, persistence and pace; and no episodes of deterioration or decompensation in work or work-like settings.[3] As part of this review, the ALJ's assessed the level

---

[3] The OHA Psychiatric Review Technique Form enables the ALJ to conduct the mental disorder disability assessment mandated by 20 C.F.R. Part 404.1520a and according to the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 at 12.00. The latter section notes:

"The listings for mental disorders are so constructed that an individual meeting or exceeding the criteria could not reasonably be expected to engage in gainful work activity. Individuals who have an impairment with a level of severity which does not meet the criteria of

of severity for both disorders using criteria set forth in Social Security regulations.[4]  The criteria for an affective disorder require *both* the presence of at least one category "A" criterion (depressive syndrome, manic syndrome, bipolar syndrome) and the presence of at least two category "B" criteria (e.g., marked restriction of activities of daily living, marked difficulties in maintaining social functioning).  The criteria for an anxiety disorder require *both* the presence of at least one category "A" criterion (persistent anxiety, persistent irrational fear, recurrent severe panic attacks, recurrent obsession, recurrent and intrusive recollection) and at least two category "B" criteria (same as noted previously) or the category "C" criterion (complete inability to function outside of one's home).  The ALJ's Review Form indicates that Mason does not satisfy the category "B" criteria for *per se* disability under either

---

the listings for mental disorders may or may not have the residual functional capacity (RFC) which would enable them to engage in substantial gainful work activity."
Under the same section, the assessment of severity considers four factors: (1) activities of daily living; (2) social functioning; (3) concentration, persistence and pace; and (4) deterioration or decompensation in work or work-like settings.

[4]  See 20 C.F.R. Part 404, Subpart P, Appendix 1 at 12.04, 12.06.

category. She was noted to exhibit only slight restrictions of activities of daily living or difficulties maintaining social functioning, while seldom suffering from deficiencies of concentration and never exhibiting deterioration or decompensation in work. Hence, a functional limitation/severity assessment was conducted to determine Mason's residual functional capacity ("RFC").

Having found Mason capable of performing a range of light work, with the additional limitations noted, the ALJ found that Mason was not precluded from returning to her past work as a home attendant and companion. He noted that, despite her diagnosed depression and anxiety, Mason had satisfactory attention span and the ability to attend to her own personal affairs and activities of daily living. The ALJ further noted Mason's only functional problem was her inability to adapt to stress in the work environment. He specifically determined that Dr. Massad's psychological findings (as included in hypotheticals given to the VE) were not suitable for inclusion in the residual functional capacity assessment because they were not supported by any other evidence documented in the record. Therefore, the ALJ determined that plaintiff had the residual functional capacity to perform

her past relevant work as a home attendant and elder care companion, and was not disabled for purposes of receiving SSI benefits.

Mason challenged this decision by submitting an additional report from Dr. Wahrenberger to the Appeals Council. Dr. Wahrenberger wrote in this report that, in addition to physical impairments, Mason had psychological issues which likely affected her ability to work. He advised that she see an internist and begin psychological counseling.

Dr. Massad wrote a follow-up letter on April 4, 1996, in which he explained again that his conclusion had been based on Mason's test scores on the Zung Depression Inventory and Clinical Anxiety Scale. He stated that Mason's emotional status, at the time of evaluation, raised concerns about her ability to adequately function in a work situation.

The Appeals Council denied Mason's request for review on May 4, 1998, and this appeal followed.

## STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, I am authorized to: (1) review the pleadings

-11-

submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision. See 42 U.S.C.A. § 405(g). My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence. See Irlanda Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C.A. § 405(g). The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. See Irlanda Ortiz, 955 F.2d at 769. Therefore, I must "'uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ has misapplied the law or has failed to provide a fair hearing, however, deference to the ALJ's decision is not appropriate, and remand for further development of the record may be necessary. See Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983); see also Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir.

-12-

1987).  I apply these standards in reviewing the issues Mason raises on appeal.

## **DISCUSSION**

Mason argues that the ALJ erred because: (1) the hypothetical questions he posed to the VE failed to include all of Mason's functional limitations; (2) he failed to allow the VE to review an exhibit filed prior to the hearing; and (3) he failed to take proper account of uncontradicted medical evidence of Mason's mental impairment.  Because I resolve the last point in Mason's favor, I need not consider her other arguments.[5]

---

[5]  On remand, however, the ALJ should bear in mind that hypothetical questions must accurately reflect the medical evidence of record. See Arocho v. Secretary of Health and Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) (ALJ's hypothetical questions inappropriate where they fail to adequately convey to the expert the precise time limits on claimant's daily activities); see also Mercier v. Secretary of Health and Human Servs., 66 F.3d 306 (1st Cir. 1995) (hypotheticals appropriately included specific one hour time limitation supported by medical report and claimant's own testimony); Melendez v. Sec. of HHS, 1994 WL 722845, *2 (D.P.R. 1994) (ALJ erred by not including mental deficiency noted by medical report in hypothetical question posed to VE); Edwards v. Secretary of Health and Human Servs., 1994 WL 259782, *5 (D.N.H. 1994), aff'd, 34 F.3d 106 (1st Cir. 1994) (hypotheticals which included specific limitations noted in medical reports adequately described claimant's medical condition to VE).

An ALJ is required to apply a five-step sequential analysis to determine whether a claimant is disabled within the meaning of the Act. At step four of the analysis, the ALJ must determine whether an impairment would prevent a claimant from performing her past relevant work. See 20 C.F.R. § 404.1520(e). The ALJ must assess both the claimant's residual functional capacity ("RFC") -- i.e., what the claimant can do despite her impairments -- and the claimant's past relevant work experience. See id.; see also Santiago v. Secretary of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991). If the ALJ finds that the claimant's RFC does not prevent her from doing her past relevant work, then the ALJ must hold that the claimant is able to work and deny her claim. See id.; 20 C.F.R. §404.1560(b). In making such findings, the ALJ must explain in detail how he came to his determination. See Santiago, 944 F.2d at 5-6. The ALJ's explanation must be based on the record, which includes any hearing testimony. See id.

The initial burden is on the claimant to make a "reasonable threshold showing" that she cannot perform her past relevant work because of her alleged disability. See Santiago, 944 F.2d at 5. To meet her burden, the claimant need only produce evidence of

how her functional limitations preclude her from performing her past relevant work. See id. Although the burden is on the claimant, once the claimant has alerted the ALJ to the presence of an issue, the ALJ is required to further develop the record.

As part of this record, the ALJ may accept testimony from medical experts and vocational experts. The testimony of a vocational expert may be directed at assessing whether a claimant can perform jobs similar to her pre-disability employment. See Arocho, 670 F.2d at 375. Medical evidence is required in assessing whether a claimant suffers from a mental disorder. See 20 C.F.R. §404.1520a, §404.1546, and §404 Subpart P, App. 1 at 12.00. While the ALJ may assess the credibility of particular testimony and choose between conflicting evidence, "the ALJ is simply not at liberty to substitute his own impression of an individual's health for uncontroverted medical opinion." Carrillo Marin v. Secretary of Health and Human Servs., 758 F.2d 14, 16 (1st Cir. 1985); see also Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991); Gonzalez Perez v. Secretary of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); Nieves v. Secretary of Health and Human Servs., 775 F.2d 12, 13 (1st Cir. 1985).

Here, Mason does not contest the ALJ's finding that she is not physically disabled.  Rather, she challenges the ALJ's finding that her psychological impairments are not disabling.  The only psychiatric evidence of record is the report of Dr. Phillip Massad.  As part of that assessment, Dr. Massad noted that Mason had: (1) poor ability to interact with supervisors; (2) poor ability to deal with work stresses;[6] and (3) poor ability to relate predictably in social settings.[7]  He also reported, with respect to Mason's current level of functioning, that "she has less contact with others. . . she attempts to avoid all stressful situations," and that "[i]n regard to work situations, [Mason's] present emotional status would likely interfere with her adaptation to stresses common to a working environment.  Given the lack of extensive employment history, it is unclear how the claimant would deal with attendance, schedules and supervisors."  Dr. Massad subsequently clarified that this statement was based on Mason's scores on the depression and

_____

[6]  Dr. Massad states "[patient] seems depressed and irritable. Would likely react to job stress with considerable frustration." (Tr. 262)

[7]  Dr. Massad states "Again, emotional status may lead to frustration and, eventually, conflict." (Tr. 263)

-16-

anxiety tests, as well as his clinical observations, all of which "raise[d] concerns about her ability to adequately function in a work situation."

The psychiatric limitations noted by Dr. Massad were reflected, to some extent, in the hypothetical question the ALJ posed to the VE.[8]  The VE noted that a person constrained by the

---

[8]  VE Bruce Chipman was asked:
> "we are presented with a potential worker who is currently 50 years of age . . . who's completed the ninth grade of school . . . [where the job in question entails] relatively simple instructions and routine tasks to be performed during the day. The individual *didn't have to wait on customers. Didn't have to deal frequently with the public.*  And in terms of decision making . . . there would not be a great deal of judgments and decision to make during the day that could be stressful.  So we're basically looking at . . . *a job that's relatively low stress from the public and from the complexity of the job.*  And looking at the type of activity that she was involved in earlier in the boarding home do you feel that with these types of limitations that type of job as it would generally be performed could still be performed?" (Tr. 107) (emphasis added).

To which Mr. Chipman replied:
> "With the limitations on the stress and if one of the duties is collecting rents and that type of thing I believe that the stress level [associated with the boarding house job] would exceed the limitations given [regarding the hypothetical individual]."

hypothetical limitations posed by the ALJ would be able to function as an elder companion. However, in response to Mason's counsel's added hypothetical limitations – a poor ability to interact with supervisors, deal with work stresses, or relate predictably in social settings – the VE stated no jobs could be performed by such an individual.[9]

The ALJ partially noted these psychiatric findings in his decision, stating that "[t]he medical evidence documented in the record, both physical and psychological, shows that . . . the claimant's depression and anxiety impose non-exertional limitations on the claimant's ability to perform the complete range of light work . . . in the form of being precluded from high stress occupations." (Tr. 19-20). The ALJ subsequently noted, however, that "Despite Dr. Massad's indications, I do not find that the evidence documented in the record supports the existence of those non-exertional limitations and therefore they are not suitable for inclusion in the claimant's residual functional capacity as limitations on her ability to [work]."

---

[9]  Mr. Chipman replied:
"In my opinion with a poor ability to interact with supervisors and to react to work stresses that would eliminate *all* jobs." (Tr. 118) (emphasis added).

(Tr. 21). Indeed, contrary to Dr. Massad's findings, the ALJ's Psychiatric Review Technique Form inexplicably lists Mason's difficulty in maintaining social functioning as "slight." [10]

The ALJ erred by arbitrarily excluding the only psychiatric evidence before him. See Carrillo, 758 F.2d at 16 (ALJ cannot disregard only medical evidence before him even though it lacks precision and focus); Nieves, 775 F.2d at 13 (ALJ's own opinion cannot be substituted for uncontroverted medical evidence); Gonzalez Perez, 812 F.2d at 749 (ALJ erred by simply rejecting the medical evidence before him). Here, Dr. Massad's psychiatric evaluation indicated Mason's inability to deal with work stresses and to interact with supervisors. The VE's conclusion that a hypothetical person with these limitations would be unable to perform Mason's previous job as a boarding house supervisor or elder care companion adds evidentiary weight to Mason's disability claim.[11] There is, therefore,

---

[10] 20 C.F.R. §404, Subpart P, App. 1 at 12.00(c)(2) notes that such social functioning in work situations may involve interactions with the public, responding to supervisors, or cooperative behaviors involving coworkers.

[11] The court in Melendez faced a virtually identical situation. See 1994 WL 722845 (D.P.R. 1994). There, the VE stated the hypothetical individual could perform certain work given the limitations posed by the ALJ. However, when the mental deficiency described by a medical report was added to the

insufficient evidence in the record to support the ALJ's decision to disregard Dr. Massad's findings, and hence to conclude Mason was not psychologically disabled.[12]  See Santiago, 944 F.2d at 5-6.

Accordingly, pursuant to 42 U.S.C.A. §405(g), I vacate the ALJ's findings and remand for further proceedings which must take due account of the psychological evidence of record in determining impairment under step four of the five-step disability analysis.  If necessary, an assessment of Mason's ability to perform any other work under step five of the analysis may be required.  On remand, the ALJ may find that additional psychiatric examination and/or vocational expert testimony may be appropriate to further develop the record.[13]

---

hypothetical, the VE concluded the hypothetical individual could no longer perform that work.  The Court held the VE's first testimony did not constitute substantial evidence supporting the ALJ's determination that the claimant was not disabled because the hypothetical did not adequately include the noted limitations.

[12]The ALJ gave no reasoning for his exclusion of Dr. Massad's report, nor specifically recited any conflicting evidence on which he relies.

[13]  I note that there may be evidence in the record supporting a future finding that Mason's psychological impairments would not preclude her from functioning as an elder companion. Dr. Massad's report itself, as previously noted, stated it was unclear how Mason would deal with attendance,

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

April 20, 1999

cc: Jonathan P. Baird, Esq.
    David L. Broderick, AUSA

schedules and supervisors due to lack of prior work history. Additionally, the assessment of ability associated with that report only refers to "a job" and not necessarily the type of low stress, infrequent contact, and infrequent supervision that an elder companion position would present. Indeed, Mason herself testified that her previous employment as a boarding house manager involved no supervision and rare contact with the owner. On remand, the ALJ may well want to clarify Mason's psychiatric limitations insofar as level of stress and level of supervision that she can tolerate in order to receive more meaningful responses from a VE and avoid a hypothetical that results in the necessary exclusion of all meaningful employment.